WARREN COUNTY, Appellant, v. DECATUR COUNTY, Appellee.

No. 46146.

614

OCTOBER 20, 1942.

M. D. Hall, of Indianola, for appellant.

Steven V. Carter, of Leon, for appellee.

SAGER, J.—These facts appear by stipulation:

Prior to March 1937, John Hurst and wife had a "legal settlement" in appellee County. In that month they took up their abode in appellant County, purchasing a residence in Indianola, where they have since lived. In July 1937, the wife, and in October of that year, her husband, began receiving help commonly spoken of as "old age pensions." In January 1941, the husband, on application for relief, was furnished (by the overseer of the poor of appellant County) transportation to a hospital in Des Moines, where he received medical care in January, February, and March of that year. The expense of his treatment forms the basis of this litigation.

Promptly after this application for relief was made, appellant's county auditor notified appellee's auditor that Hurst and wife "having a legal settlement in Decatur County, Iowa, have made application for relief, and are being a county charge in Warren County." Further, "that unless removed, said Decatur County will be liable for all expenses incurred in their behalf."

This demand was met within 15 days by a notice that appellee County was denying the claim. The case was submitted on the stipulation and pleadings. The trial court held against appellant, deciding that Hurst and wife had a legal settlement in appellant County since March 1937. With this conclusion of the trial court we agree.

The parties argue the effect of section 3828.088, subdivision 3, 1939 Code of Iowa, which reads as follows:

"A legal settlement in this state may be acquired as follows: * * *

"3. Any such person who is an inmate of or is supported by any institution whether organized for pecuniary profit or not or any institution supported by charitable or public funds in any county in this state or any person who is being supported by public funds shall not acquire a settlement in said county unless such person before becoming an inmate thereof or being supported thereby has a settlement in said county."

Appellant contends that since Hurst received old-age pension in 1937, he was being supported by "public funds" within the meaning of the above statutory provision. Appellee insists that the old-age-assistance statute, chapter 189.1, could not have been intended to regard the moneys expended on the so-called old-age pensions as public funds. It may be admitted that subdivision 3 of section 3828.088 is not clear as to its meaning. It suggests inquiry as to whether the phrase "supported by public funds" has reference to the support of the poor person as "an inmate" of one of the institutions described in that subdivision, or whether it refers to support from public funds no matter when or where supplied. We do not feel called upon to decide this question.

It will be observed that subdivision 3, to which reference is made, appears in chapter 189.4 of the 1939 Code, which deals with the support of the poor. No notice was served at any time on the Hursts to depart, as provided by section 3828.092. If we were dealing with the case of one strictly a poor person within the meaning of the statute, we might be called upon to decide the effect of the help received by the Hursts as obviating the necessity for such notice. But we hold that, while old-age assistance is an additional help to that provided by the poor laws, the statutes affording this assistance are not to be construed in the light of the laws with reference to the poor which have been in force for many years. The statute with reference to old-age assistance makes no reference to "legal settlement"

nor the methods by which that status may be attained. This assistance is available to every person who has attained the age of 65 years, who has a "residence or domicile" in the state of Iowa, and is not otherwise disqualified. Section 3828.008, 1939 Code. Under the facts before us, the other provisions of that section need not be here considered.

In the case before us there arises no situation which seems even remotely to invoke the provisions of the poor laws. The Hursts had accumulated some property in appellee County, of a valuation not disclosed. This was sold and a home purchased in appellant County. This was a voluntary move on their own part and involved none of the questions which arose in Audubon County v. Vogessor, 228 Iowa 281, 291 N. W. 135, upon which appellant relies. The Hursts presumably paid taxes on their home, and it seems not to have occurred to anyone in authority in appellant County that they were unacceptable as citizens. It was not until nearly four years later, when the misfortune of the husband in the way of sickness compelled him to ask for help, that any move was made to contest his legal settlement, domicile, or residence, or to make the claim that he and his wife still be held as charges of appellee.

Under the stated facts before us, we are unable to conclude that the legislature intended that appellant, in which Hurst had been a resident for three years, could challenge his status and hold appellee, his former domicile, liable for relief merely because Hurst had been or was receiving old-age assistance in appellant County. If this question could be raised after nearly four years, as is the case here, the question arises: When would counties be barred from litigating the status of those who at one time lived elsewhere in this state? The authorities cited by parties have been examined and found to call for no analysis here.

What we have already said points to the conclusion that the judgment of the trial court was right, and it is affirmed.— Affirmed.

WENNERSTRUM, C. J., and HALE, MILLER, MITCHELL, OLIVER, GARFIELD, and BLISS, JJ., concur.